Our next case is number 2023-2077, Odyssey Logistics & Technology Corp. v. Vidal. Mr. Bauer. May it please the Court? The District Court below dismissed the case for lack of subject matter jurisdiction under Rule 12b-1, and it found that because it lacked subject matter jurisdiction, it could not proceed to hear the case. As a consequence, the only issue in this appeal is whether the District Court erred in concluding that it lacked subject matter jurisdiction. I know that we will probably get into some of the issues regarding forfeiture and res judicata and the procedural status of the case, but I think that the only issue and its threshold issue is the question of subject matter jurisdiction. Now, we—an appellant in its blue brief showed that what is at issue here is an undisputed violation of the Appointments Clause of the Constitution and the appellant's use of the remedy—sui generis remedy—specified by the U.S. Supreme Court in Arthrex and by this court in Biloro Global. That is, therefore, federal question jurisdiction because it involves a violation of the Constitution and the remedy for it. It's appellant's contention, before we go to these other issues, that that in and of itself means that a federal court has jurisdiction to the case. The other issues that were raised and framed by the government as precluding judicial review may, in fact, preclude review of the merits of appellant's request for direct review, but they don't mean that there is no subject matter jurisdiction. So, Mr. Bauer, in footnote two of your brief on page 20, you appear to say that if the patent office had closed this case on the computer system, you'd lose. Is that what you're saying there? That your whole argument depends on the fact that they didn't close the case on their computer system? Just a second, Judge. I'm looking at the footnote now. No. There, I think, in that footnote, we are addressing the argument, which I think is a issue, of whether or not the proceeding was closed and, therefore, cannot be revisited. So, my question is, suppose this case, it had been closed in the computer system, would that mean that you would lose, that you couldn't reopen it under those circumstances? It would mean that the request for direct review would have to be denied. But what the district court should do is say, we have jurisdiction, and then say, we cannot hear this case because it's closed. So, if it was closed, it couldn't be reopened based on the Supreme Court's decision in Arthrex? Yeah. I think it's a lack of case or controversy would be the issue there. I would also raise that the Supreme Court recently addressed the issue of subject matters jurisdiction in reviewing this court's decision in Harrell v. Department of Defense, where the Supreme Court surprisingly held that the 60-day notice for noticing an appeal was not jurisdictional in nature. And that issue came down after the briefs were submitted in this case, rather surprisingly result, because the 60-day in that case was statutory. It certainly is something that historically had been viewed as jurisdictional, but the Supreme Court said it was not jurisdictional. And that case has been followed by other circuits in applying... But that doesn't help you very much if we say that you're right, that the court had jurisdiction, but that the result it reached was necessarily correct because it could not award the relief that you're requesting. That doesn't help you very much. The reason why I persist, Your Honor, is the 12B-6 is foreclosed in the district court because there's already been an answer filed to our complaint, which in the Fourth Circuit precludes a 12B-6 motion. And we had already filed a summary judgment motion. So I would hope that if we were to get a reversal on the subject matter jurisdiction, the court would hear the other motions that the government has, and then it provide an opinion on our summary judgment motion all at the same time. So even though this seems to be a question of 12B-1 versus 12B-6, it does have some practical import which way that goes. I do have to mention that in the district court's opinion and in the government's motion to dismiss, they did not distinguish between 12B-1 or 12B-6. They went to the waiver and the forfeiture issues and the allegation that the case was closed and says, you know, you should dismiss this case 12B-1 or 12B-6, you decide. And it was a conclusion in search of a rationale. And 12B-1 lack of subject matter jurisdiction is the wrong rationale. I mean, it has import because then it would cause the courts to not be able to hear certain cases. So it is important that the subject matter jurisdiction issue be correct. Counselor, when I consider your arguments and you raise some good points, it seems to me that even following through to the end of those arguments that you lose, I don't see a clear path here for you. What do you think is a clear path for you? Well, I think a path forward is to have the director consider a request for review. And that can be done. That is the intention of the director. When the director implemented the 2019 guidelines, it was the intention of the director to give relief to what was at that time viewed as an overly narrow interpretation of Alice v. CLS Bank. It was the intention of the director to give relief to applicants in the patent office who are affected by that overly narrow interpretation. And so the request for director review simply asked the director to let us argue that point. It is the appropriate remedy. Why did the director have to allow that? The director has discretion, Your Honor, in treating the request for director review. They refused to give you director review here, right? No, Your Honor. What happened here is that the request for director review was refused to be considered as a blanket issue. And quite frankly, it was an anonymous email that did that. So it was not done by the director or a proper delegate of the director. They refused to even consider it. Now, there are a series of ex parte appeals in which the director will say it's considered but it's denied. But here, the reason for not considering it is that we don't consider requests for director reviews in ex parte appeals. Well, that's directly contradicted by Biloro Global and the Golden Rule Fasteners case. It is the appropriate remedy in an ex parte appeal. You know, again, you can argue forfeiture on waiver and the closed case, but it is the appropriate remedy. Counselor, what is your view as to our own jurisdiction to reconsider or consider a decision by the director that's made at its own discretion not to review? It would be a very deferential standard of review. And again, the request for review does not even ask the director to change his mind on anything. I mean, the PTAB decision here was rendered in 2018. In 2019, these new guidelines come out. It's a change in the way the patent office operates. There are hundreds or perhaps even thousands of the patents which have been granted under those guidelines, which the appellant here is being denied. And there is a timing or procedural issue, but there is certainly not a jurisdictional issue. Can I follow up on your answer to Judge Rina's last question, which you had said that the standard of review would apply to the board's discretion to, I mean, the director's discretion to not consider grant review. You said that that was very deferential. But haven't we held that there's no Article III review of such a decision? In the ESIP case, that was a different procedural status. That was a petition for writ of mandamus filed directly with the federal circuit. And the federal circuit said under that statute, it could not be granted. It was not a subject matter jurisdiction. In fact, if there's a subject matter jurisdiction problem, the court says we don't have jurisdiction and doesn't issue an opinion. In fact, the court issued an opinion and says this is just plain wrong because it's not appropriate to do a petition for writ of mandamus in the direct appeal. Here, appellant followed the procedure set forth in ESIP. It filed a separate complaint in the Eastern District of Virginia complaining about the single decision of this blanket email, anonymous email, refusing to consider the request for direct review. And what happens, and the only thing that's in the record is this two sentences by an anonymous email. I mean, that also strikes at against the very essence of the Arthrex decision that there has to be some accountability. And the director has much discretion and latitude how she applies that authority, but she has to have that authority. Now, prior to this- But cases have to come to a conclusion sometime. And if this was a closed case, you lose, right? Well, I would agree that if it was a closed case, that if there was a notice of abandonment issued in the case, then we would be without hope in the case. We do, you know, under the facts, and particularly under the record, there is nothing to indicate that the case is closed. Well, we decided the case. We affirmed the board's decision of unpatentability. And why does it matter whether it was entered as a closed matter in the agency's computer system or not? Well, the Federal Circuit's opinion merely affirmed PTAB's decision that it correctly applied the guidelines and its analysis under Section 101. The statute says that the case should proceed according to the outcome of the cases. That simply because there is one PTAB decision and one Federal Circuit decision does not mean that the case is necessarily closed. Unfortunately, there are cases in which it goes to the PTAB three or more times, and there are cases that go to the Federal Circuit more than one time. And here, there is a change in the- Not after we make a determination that the claim is unpatentable. Well, it is dependent on two things, which were the issues raised in the request for director review. One, the director changed the guidelines for doing this to everyone's benefit. In fact, those 2019 guidelines were applied by the PTAB in a decision rendered just weeks after the guidelines in which the 2019 guidelines weren't even briefed. The director was trying to correct what it thought a too narrow interpretation of the Alice case. The other thing that comes up here is there are issues that- So, this is really a change in the process. And the case- And now, there's new guidelines. It's only equitable that the appellant gets the benefit of those 2019 guidelines that hundreds of other applicants- Can I ask you, the guidelines aren't binding on the board, right? The board is following Federal Circuit law, right? I believe not. I think- You think the MPEP is binding on the board and those guidelines? Not the MPEP, but the director did take the position, and I believe still does take the position that its guidelines- That the PTAB should follow its guidelines on subject matter eligibility. To the extent that there is any kind of variance between those guidelines and the Federal Circuit jurisprudence, my point is only that the director should decide whether or not we get the benefit of those guidelines. If they didn't, ex parte Smith, after they had already been briefing on the previous guidelines, we should get the benefit of that. The other issue, of course, that comes up is there was some- There's concern about the process that was used in that earlier PTAB decision that could not have been reached by the Federal Circuit because the Federal Circuit review is constrained to the written record. There are issues which came to light with respect to interference in the judge's decision-making by the director's office or other parts of the patent office, and that is also raised in the request for director review because there's no other way to reach that issue. There's no other to get review of that if that's wrong, and that came up in the Supreme Court's review and oral argument in Arthrex. What about these cases in which we found out that there was participation during the decision-making process? Now, to her credit, the director has stopped that practice, but this is the only way that a party can get some internal review of those processes. Otherwise, you're leaving all of those people who may have suffered those events without any remedy, which is what the Supreme Court said had to happen. There had to be a remedy, and the director gets to decide if and what there will be any remedy. I'm sorry. I don't know how much time I have left, but I'm going to continue. We'll give you two minutes, Roboto. Thank you very much. Sheila, how much time has he had? We don't have a clock in front of us. He's over by three minutes. Just for a technical matter, sorry. The clock for me is up in the right-hand corner on the screen. See it in red there? Try scrolling over. I have it now. Thank you, Your Honor. You're out of time, so we'll give you two minutes, Roboto. Okay. We'll hear now from the PTO, Ms. Barmore. Good morning. May it please the Court. I am Cynthia Barmore, here for the federal government. From the discussion this morning, it seems to me like this panel has a pretty good handle on the relevant facts. Just to highlight a couple, the PTAS 2018 decision has already been affirmed by this Court on direct review in 2020. At no point during those proceedings did Odyssey raise the Appointments Clause challenge it raises now. I'm happy to answer any questions this Court may have, but we are also comfortable to rely on the arguments in our brief. I do have one question. There's no discussion in your brief of Rule 60B, which is the Federal Rule of Civil Procedure that deals with the reopening of district court judgments. There is case law under that that you can't reopen based on a closed case based on new law. It would seem as though that same policy that you find under the 3060B6 cases should apply to agency proceedings as well. Have you looked into that at all? We did not dive into this potential difference between factual developments and legal developments because here we thought it was so clear that you really don't have either that could satisfy a changed circumstances exception to reopening. Because we thought that this case was so clearly in the line of ESIP, we didn't want to propose a perpetual limit like that here. Your Honor may be right, but there may be other reasons that this is unreviewable. Well, I guess what I was asking is why shouldn't we look to 60B6 for guidance in determining when an agency proceeding can be reopened? Well, I don't want to say that this Court shouldn't look to that type of analogous situation. I don't think it's necessary here to look into a district court reopening context just because the case law under the Supreme Court's decision in ICC versus BLE, this Court's decision in that decision as well as subsequent Supreme Court decisions affirming that this type of agency decision not to reopen an agency proceeding is committed to agency discretion. That would be Lincoln versus Vigil, the Your Home versus Shalala case. In all of those cases where you don't have changed circumstances or new facts presented, it's very clear that that type of decision is committed to agency discretion. And so this Court doesn't really need to look to a district court Really? The agency would have discretion to open a years old case where we'd affirmed a judgment of unpatentability? I'm not sure that that's true. So, Your Honor, just to clarify, I'm sorry if I misspoke there. We don't see anything that the agency could have done here in reopening. We don't think that there's any aspect of this decision that it could revisit that would be consistent with this Court's mandate affirming the decision in 2020. And, of course, everything that the PTO does has to be consistent with this Court's mandates. And so we're not aware of anything in this case that the PTO actually could have revisited. But just to highlight the general legal principle, we don't really think it matters whether the case was closed or whether this was just a motion to reconsider. I just want to highlight that the doctrine here applies both to decisions not to reopen and decisions not to reconsider final decisions. And there's no argument that the 2018 agency decision wasn't a final decision. And it was certainly affirmed by this Court on direct review. And so whether it was a motion to reopen or just to reconsider, it would be equally unreviewable. Thank you, Your Honor. Okay. Unless there are any questions? I think we're finished. Mr. Bowery, you have two minutes. Okay. Your Honor, I had actually reserved five minutes for rebuttal. I don't know, but you went over your time. All right. Then just quickly then, there is a difference between reopening a case that's been decided and filing a request for direct review to cure a violation of the appointments clause of the Constitution. When we talk about closed cases, it's very odd that we say, okay, there was a constitutional violation here, but we're going to let it stand because there's been a decision. I mean, you're saying that we can't fix that violation, which is a constitutional violation and not merely some other change. And I think it's not appropriate to look at this as reopening the case so much as a remedy. I also have to point out that again, we submitted, it's not a closed case. The appellant actually filed a petition for expedited consideration, which was granted. If the case is closed, why are petitions being considered and granted? And the government cited Rule 197, and that's the rule that indicates the effect of federal circuit decisions on its proceedings. But in our reply brief, we pointed out Rule 198 and the process set forth in the MPEP as to what happens after there's been a PTAB decision and a federal circuit decision. As I said before, and as the court knows, that is not necessarily the end of the case. And Rule 198 says that the director can make and take other action. This sometimes happens. And indeed, usually it happens because the Patent Office wants to make something different where it hasn't been affirmed. But here, the case, of course, is that we're asking for review under the current guidelines for patent subject matter eligibility. I think, Mr. Bauer, we're out of time. Thank you, Mr. Bauer. Thank you, both counsel. The case is submitted. That concludes our session for this morning. Thank you.